UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RONALD REED,

    Plaintiff,

v.                                                       Case No: 8:14-cv-714-T-27TGW

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** is the Report and Recommendation of the magistrate judge ("R&R") (Dkt. 25), recommending that the decision of the Commissioner denying Plaintiff's claim for Supplemental Security Income be affirmed. Plaintiff filed objections (Dkt. 28), to which the Commissioner responded (Dkt. 31).

After a *de novo* review of the findings to which objections are made and a review of the findings to which objection is not made for plain error, I agree with the magistrate judge that the decision of the Commissioner is supported by substantial evidence. Accordingly, the objections are overruled, the Report and Recommendation is adopted, and the Commissioner's decision is affirmed.[1]

**I.    PLAINTIFF'S OBJECTIONS**

Plaintiff originally challenged the ALJ's decision on seven grounds. Acknowledging that

---

[1] A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. §636(b)(1). Those portions of the report and recommendation to which objection is made are reviewed *de novo*. §636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

1

"there may be substantial evidence" supporting the ALJ on the first, third, fourth and seventh grounds he initially raised, he limits his objections to the R&R to three. He contends that (1) the ALJ failed to give proper weight to the opinions of his treating physicians and those of the State Agency Physicians; (2) the ALJ failed to account for Plaintiff's inability to stoop; and (3) the ALJ's hypothetical posed to the vocational expert ("VE") was incomplete because it did not adequately account for Plaintiff's moderate limitation in concentration.

## II.   STANDARD

The decision of the ALJ is reviewed to determine whether the correct legal standards were applied, *Graham v. Apfel*, 129 F.3d 1420, 1420 (11th Cir. 1997), and if the ALJ's conclusion as a whole is supported by substantial evidence. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Id.* Legal conclusions of the ALJ, however, are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## III.  DISCUSSION

The Commissioner follows a five-step, sequential evaluation process to determine whether a claimant is disabled. *Winschel*, 631 F.3d at 1178. The first three steps are whether the claimant (1) is currently engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments; and (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments. *Id.* The fourth step is whether, based on the claimant's

residual functional capacity ("RFC"), the claimant can perform any of his past relevant work despite the limitations caused by his impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). At the fourth step, the ALJ considers all of the record evidence in determining the claimant's RFC. *See id.* The final step is whether there are significant numbers of jobs in the national economy the claimant can perform, given his RFC, age, education, and work experience. *Winschel*, 631 F.3d at 1178.

### A. The ALJ Properly Assessed the Medical Opinions

In his first objection, Plaintiff contends that the ALJ did not properly assess the opinions of treating physicians Flandry, an orthopedist, and Gleason, a psychiatrist. First, he essentially contends that the magistrate judge applied an incorrect standard in assessing whether the ALJ properly discounted their opinions. Citing *Schorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987), he argues that in addition to "good cause" for discounting a treating physician's opinion, there must be "medical evidence which conclusively counters the treating physician's opinion" (Dkt. 28, p. 2). Plaintiff's contention is mistaken. The magistrate judge applied the correct "good cause" standard in determining whether the ALJ properly discounted the opinions of Drs. Flandry and Gleason.

As the magistrate judge recognized, the opinions of treating physicians "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists "when (1) the treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d at 1241. And the ALJ must "state with particularity the weight given to different medical opinions, and the reasons therefore." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

3

Plaintiff's contention that in addition to "good cause" there must be "medical evidence which conclusively counters the treating physician's opinion" before a treating physician's opinion may be discounted is simply incorrect. While that language appears in *Schorr*, that court applied the "good cause" standard. Nothing in the opinion suggests that both good cause and medical evidence conclusively countering the treating physician's opinion are required before the treating physician's opinions can be discounted.

Certainly, medical evidence that conclusively counters a treating physician's opinion would support discounting that opinion, consistent with the "good cause" standard. And the absence of such evidence can likewise be considered in determining whether the ALJ properly discounted the opinion. *See Schnorr*, 816 F.2d at 582 ("Considering the record as a whole, the medical evidence does not conclusively counter these doctors' opinions."). But that is not to say that this is a requirement in addition to the "good cause" standard before a treating physician's opinion can be discounted. Plaintiff's objection is accordingly overruled.

"With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Lewis v. Callahan*, 125 F.3d at 1240-41; *Winschel*, *supra*. Specifically, the ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *Schnorr v. Bowen*, 816 F.2d at 581. As the magistrate judge correctly found, the ALJ articulated legitimate reasons for not giving the opinions of Dr. Flandry and Dr. Gleason considerable or substantial weight.

In May 2009, after Plaintiff's revision ACL reconstructive surgery, Dr. Flandry released Plaintiff to sedentary work with "no standing, walking, pushing, pulling, carrying, lifting, working around unprotected heights, or moving machinery."(AR 42, 357). In September 2009, Dr. Flandry

4

ordered a Functional Capacity Evaluation ("FCE"), and based on that report, concluded that Plaintiff could perform sedentary work with restrictions on hazards. While the ALJ agreed with Dr. Flandry that Plaintiff was limited to sedentary work, he discounted Dr. Flandry's opinion that Plaintiff was unable to stand, walk, push, pull, carry, or lift, as well as his opinions in connection with a worker's compensation claim (AR 39, 42, 357, 562-64).

In explaining why he discounted Dr. Flandry's opinions, the ALJ gave two legitimate reasons. First, he noted that the record indicated that Plaintiff's condition had improved since the FCE. (AR 43). As the magistrate judge outlined, record evidence supports this finding. (Dkt. 25, pp. 9-10). The Government outlines this evidence as well (Dkt. 31, pp. 7-8). Second, Dr. Flandry based his opinion on the FCE report which the ALJ found to be unreliable, since it indicated that Plaintiff may have engaged in "occasional Symptom Magnification behavior." (Id.).[2]

Specifically, the FCE report indicated that Plaintiff had a physical demand classification of sedentary but that his functional strength deficit and body mechanics could not be addressed "due to limited participation during this evaluation." (AR 349). Plaintiff's validity profile was only 53%, indicating "an Invalid and inconsistent effort" (Id.). He was "considered to <u>have a high level of pain and he demonstrated occasional Symptom magnification behavior</u>." (emphasis in original) (AR 348, 359-60). The report noted a "failed validity criteria, which "suggests that the patient is attempting to control the test results to demonstrate more pain and disability that are actually present." (AR

---

[2] The ALJ gave little weight to the opinion of the evaluator and therapist who authored the FCE report that Plaintiff could perform sedentary work because "this opinion . . . is not from an acceptable medical source." (AR 42-43). Plaintiff does take issue with this finding by the ALJ, and for good reason. *See Siverio v. Commissioner of Social Sec.*, 461 Fed.Appx. 869, 871 (11th Cir. 2012) ("Only 'acceptable medical sources' can provide medical opinions, which are 'statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of' a claimant's impairment, including symptoms, diagnosis and prognosis, what the claimant can still do despite the impairment, and the claimant's physical or mental restrictions.").

368). Plaintiff's Overall Validity Profile was described as "**INVALID WITH SUB-MAXIMUM EFFORT**" (AR 359) (emphasis in original). Dr. Flandry even acknowledged that Plaintiff's "validity profile showed only 53%, indicating submaximal effort." (AR 452). Accordingly, the ALJ did not err in discounting Dr. Flandry's opinion, because he relied on flawed FCE. *See Weekley v. Comm'r of Soc. Sec.*, 486 Fed. App'x 806, 808 (11th Cir. 2012) (symptom exaggeration during an FCE may call into question the reliability of doctors' opinions based on those claimed symptoms).

In March 2010, in connection with a worker's compensation claim, Dr. Flandry completed an Impairment Rating Report, opining that Plaintiff had a 31% right knee impairment and a 12% whole person impairment (AR 562-64). To the extent these ratings were inconsistent with Plaintiff's residual function capacity, the ALJ accorded them "little weight" because he found that they "are not compatible with the Social Security definition of 'disabled.'" (Dkt. 12-2, p. 9). That conclusion is consistent with applicable law. *See Symonds v. Astrue*, 448 Fed.Appx., 10, 13 (11th Cir. 2011) (Social Security Act's definition of disability controls, not impairment ratings, since the ultimate issue of disability is left to the Commissioner, and a statement by a medical source that a claimant is "disabled" or "unable to work" is not binding on the ALJ.).[3]

As for Dr. Gleason's opinion that Plaintiff "can't work," the ALJ gave less weight to that opinion for several reasons, each of which was explained by the ALJ. The ALJ first noted that the opinion was "offered on a form" without objective support. Second, the opinion was inconsistent with the doctor's treatment notes (AR 41). Lastly, the ALJ correctly noted that an assessment of

---

[3] The balance of Plaintiff's argument is directed to the magistrate judge's discussion of inconsistencies between the medical records and the opinions of Dr. Flandry bearing on the improvement in his medical condition, and are unpersuasiveness. The magistrate judge was simply pointing out portions of Plaintiff's medical records which were inconsistent with Dr. Flandry's opinions, particularly the notes of Drs. Shefsky and Rodriquez. (AR 415, 594-95; 682). Indeed, the ALJ found that Dr. Shefsky's diagnosis supported the finding of a severe impairment, and his RFC finding that Plaintiff required the use of an ambulatory aide (AR 39-40).

whether Plaintiff can work is for the Commissioner to make, not Dr. Gleason. 20 C.F.R. § 416.927 ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled").[4] The ALJ's observations are consistent with the record evidence.

Dr. Gleason, a psychiatrist, noted in a Treating Source Mental Status report that Plaintiff's thought process was logical, he had fair concentration, was pleasant and cooperative, and was oriented as to time, place, and person (AR 574-76). Although he diagnosed Plaintiff with major depressive disorder and posttraumatic stress, he also stated in conclusory fashion that Plaintiff's "numerous physical disabilities" prevented him from holding a job (AR 576). When asked what Plaintiff could do despite his mental impairments, Dr. Gleason concluded that Plaintiff "can't work" because of his physical "disabilities" (AR 576). When asked to explain if Plaintiff could sustain work activity eight hours a day, five days a week, and if not, explain why, using examples of behavioral objective data, Dr. Gleason provided none, noting only "See above. Can't work." (AR 576).

The magistrate judge correctly concluded that the reasons articulated by the ALJ for discounting the weight he gave to Dr. Gleason's opinion constitute "good cause," and are supported

---

[4] In response to Plaintiff's argument that Dr. Gleason could properly opine on the "effects of the physical problems on the ability to function mentally," the magistrate judge noted that the ALJ had not discounted Dr. Gleason's opinion because of his specialty. Notwithstanding, the magistrate judge observed that Gleason's opinion on Plaintiff's physical condition "is clearly beyond his expertise," citing 20 CFR § 416.927 (c)(5) ("Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.") (Dkt. 25, p. 19).

Falling below the expected standards of professionalism and civility, counsel characterizes the magistrate's observation as "patently absurd" (Dkt. 28, p. 5). Later, he refers to the magistrate judge's decision as "extremely disingenuous." (Dkt. 28, p. 9). A word of caution is therefore in order, if for no other reason than guidance.

A lawyer licensed to practice in Florida makes this oath: "I will maintain the respect due to Courts of Justice and Judicial Officers." Oath of Admission, The Florida Bar. While one may fairly disagree with a judge's finding or conclusion, it serves no purpose to direct a disparaging remark toward a judicial officer who has honorably served for more than three decades. It certainly does not make an argument persuasive.

by the record. *Phillips,* 357 F.3d at 1241 ("[G]ood cause" exists when the physician's opinion is not bolstered by the evidence, or the physician's opinion is conclusory or inconsistent with the doctor's own medical records). Plaintiff's argument to the contrary is rejected.

Lastly, Plaintiff challenges the weight given by the ALJ to the opinions of the nonexamining State Agency physicians, Drs. Weksler and Desai. According to Plaintiff, since the ALJ should not have discounted the opinions of Drs. Flandry and Gleason, he should have given the State Agency doctors little weight, if any (Dkt. 28, p. 7). Since the ALJ properly discounted the treating physician's opinions, this argument is without merit.

As the magistrate judge noted, the opinions of nonexamining physicians are generally afforded less weight than the opinions of treating physicians. *See Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (opinion of nonexamining physician entitled to little weight if contrary to the opinion of claimant's treating physician). However, when good cause for not relying on a treating physician's opinion is shown, more weight may be accorded the opinion of a consulting physician. *Jones v. Bowen,* 810 F.2d at 1005.

As discussed, the magistrate judge correctly found that there was good cause to discount the opinions of Plaintiff's treating physicians, Drs. Flandry and Gleason. Since there was good cause for discounting those opinions, the ALJ did not err in giving greater weight to the opinions of Drs. Weksler and Desai. The ALJ gave "some weight" to Dr. Weksler's opinion that Plaintiff could perform light work without the limitations in the RFC because it was "generally consistent with the evidence," but found that new evidence had been presented which "warrants greater limitations." (AR 42). The ALJ gave "great weight" to Dr. Desai's finding that Plaintiff could perform light work with limitations, since those limitations were consistent with the RFC and "well supported with

specific references to medical evidence," "consistent with the evidence as a whole," and "there is no objective evidence contradicting these findings" (Id.). The record evidence supports these assessments.

In sum, because there was good cause for discounting Plaintiff's treating physicians' opinions and the ALJ clearly articulated legitimate reasons for doing so and specified the weight accorded those opinions and those of the nonexamining physicians, the ALJ did not err. Plaintiff's objections are accordingly overruled.

### B. The ALJ Accounted for Plaintiff's Inability to Stoop

Plaintiff's next objection is directed to the magistrate judge's conclusion that "the law judge did not need to include a bending or stooping limitation in his residual functional capacity finding." (Dkt. 25, p. 30). Plaintiff contends that Dr. Flandry accepted the FCE report "which showed that Mr. Reed could bend only infrequently, or one (1) to two (2) percent of the day. . ."(Dkt. 28, p. 7).[5]

Because the ALJ discounted the FCE report and Dr. Flandry's opinion based thereon, a bending or stooping limitation was unnecessary for the RFC. And, as the magistrate judge points out, this argument is irrelevant because the ALJ found that Plaintiff could perform jobs that would not require stooping (AR 44; Dkt. 25 at 30).

### C. The ALJ's Hypothetical Was Complete

Lastly, Plaintiff's contention that the ALJ's hypothetical posed to the VE was incomplete because it did not adequately account for Plaintiff's moderate concentration impairment and did not include a definition of "simple repetitive task" is without merit. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which

---

[5] The FCE states that Plaintiff can bend only infrequently, 1-2% of the day (AR 361).

9

comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). Here, the ALJ did just that, matching the Plaintiff's residual functional capacity with the hypothetical posed to the VE (*compare* AR 39 with 85-87).[6] The hypothetical posed to the VE, as the Commissioner notes, accounted for the rating of "moderate" difficulties in maintaining concentration, persistence, or pace in accordance with the regulations and caselaw. *See Winschel*, 631 F.3d at 1180-81.

Plaintiff's calculation that a moderate concentration impairment would prevent him from concentrating between one-third and two-thirds of the day is supported by no authority, as the magistrate judge noted.[7] And finally, Plaintiff's argument that the ALJ erred in failing to define "simple repetitive task" was not raised in his initial memorandum and there is no indication that he could not have presented it to the magistrate judge. As such, it will not be considered. *See Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009).[8]

Accordingly,

1.   Plaintiff's Objections are **OVERRULED**.

---

[6] In his RFC, the ALJ found that Plaintiff "can maintain attention and concentration for two hours before needing a ten-minute break." (AR 39). In the hypothetical posed to the VE, the ALJ included the same limitation, that the person could "maintain attention and concentration for two hours, but then, would require a 10 minute break." (AR 86-87).

[7] Plaintiff's attempt to analogize to physical impairments is likewise unpersuasive and supported by no authority (*see* Dkt. 28 at 9 ("The answer would seem to be that this would be similar to the way physical impairments are judged.")).

[8] Actually, the ALJ found that Plaintiff "can perform simple, routine, repetitive tasks with ordinary and routine changes in work setting or duties." (AR 39). As the magistrate judge noted, this Circuit holds that a limitation to simple, routine tasks adequately addresses a plaintiff's moderate limitations in concentration where the medical evidence supports that limitation. *See Hurst v. Commissioner of Social Sec.*, 522 Fed.Appx. 522, 525 (11th Cir. 2013) ("We have previously stated that where medical evidence demonstrated that a claimant could engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, a hypothetical including only unskilled work sufficiently accounted for the limitations."). And the ALJ included that limitation in the hypothetical posed to the vocational expert (AR 86) ("The person would be limited to only simple, routine tasks . . .").

2. The Report and Recommendation (Dkt. 25) is **ADOPTED** and **APPROVED** in all respects and is made a part of this order for all purposes, including appellate review.

3. The decision of the Defendant Commissioner is **AFFIRMED**.

4. The Clerk is directed to **ENTER JUDGMENT** in favor of the Defendant Commissioner and against the Plaintiff.

5. The Clerk is directed to **CLOSE** the file.

**DONE AND ORDERED** this 17th day of September, 2015.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record